JOSEPH WILLIAM BRADSHAW et al., Respondents, *v.* AGRICULTURAL INSURANCE COMPANY of Watertown, N. Y., Appellant.

Where a policy of fire insurance provides that in case of disagreement as to the amount of a loss the same shall be ascertained by "competent and disinterested appraisers," one to be selected by each party, the term "disinterested" does not mean simply a lack of pecuniary interest, but requires the appraiser to be one not biased or prejudiced.

When a false statement is made by the agent of the insurance company in regard to the attitude in this respect of a proposed appraiser, for the purpose of inducing consent on the part of the insured to his appointment, and consent is thereby procured, and when in fact the appraiser is not disinterested, and his attitude in this respect is concealed, and an

appraisal is made greatly below the actual loss, an action is maintainable to set aside the appraisal; and this, although it has been concurred in by the appraiser nominated by the insured.

An appraiser appointed by a party under such a provision is not his agent. *Bishop* v. *Agricultural Ins. Co.* (130 N. Y. 488); *Fox* v. *Hazleton* (10 Pick. 275); *Goodrich* v. *Hulbert* (123 Mass. 190); *Cheney* v. *Martin* (127 id. 304), distinguished.

(Argued January 19, 1893 ; decided January 31, 1893.)

APPEAL from judgment of the General Term of the Supreme Court in the third judicial department, entered upon an order made December 8, 1891, which affirmed a judgment in favor of plaintiffs entered upon a verdict.

This action was brought to set aside an award made by appraisers under a policy of insurance issued by defendant, a fire insurance company, to one James J. Bradshaw, deceased, and to recover damages for the destruction by fire of the property insured.

The facts, so far as material, are stated in the opinion.

*A. H. Sawyer* for appellant.   It was not necessary to give any notice to the plaintiffs of the time or place of the meeting or deliberation of the appraisers. (*Hall* v. *N. F. Ins. Co.*, 57 Conn. 105 ; 17 At. Rep. 356 ; *Wiberly* v. *Mathews*, 91 N. Y. 648 ; *Cobb* v. *D. M. Co.*, 108 id. 463, 468.)   The finding of the jury and the decision of the trial court that Lacey was not a disinterested appraiser, is wholly unsupported by the evidence. (*Pollock* v. *Pollock*, 71 N. Y. 137, 140 ; *Mason* v. *Lord*, 40 id. 477, 484 ; *Halpin* v. *P. Ins. Co.*, 118 id. 165, 172 ; *Perkins* v. *Giles*, 50 id. 228 ; *M. R. C. Co.* v. *S. Co.*, 58 id. 667 ; *Herrick* v. *Blair*, 1 Johns. Ch. 101 ; *Winship* v. *Jewett*, 1 Barb. Ch. 173 ; *Masury* v. *Whiton*, 111 N. Y. 679 ; *Sweet* v. *Morrison*, 116 id. 19, 33 ; *Hall* v. *N. F. Ins. Co.*, 57 Conn. 105 ; 17 Atl. Rep. 356 ; *Speer* v. *Bidwell*, 44 Penn. 23 ; *L. & L. & G. Ins. Co.* v. *Goehring*, 99 Penn. St. 13 ; *B. W. P. Co.* v. *Gray*, 6 Metc. 131, 165 ; *Jocelyn* v. *Donnel*, 14 Am. Dec. 753.)   The appraisal under the policy to determine the amount of the loss is not an arbitration, and is not

governed by the rules that govern such proceedings. (*Garr* v. *Gomez,* 9 Wend. 649, 661; *Elmendorf* v. *Harris,* 5 id. 522.) It is no objection to this award and furnishes no reason whatever for setting the same aside, that Lacey had on previous occasions made appraisals in behalf or upon the appointment of the defendant. (*Goodrich* v. *Hulbert,* 123 Mass. 190; *Cheney* v. *Martin,* 127 id. 304; *Fox* v. *Hazelton,* 10 Pick. 277.)

*S. W. Jackson* for respondent. The agreement for appointment of appraisers to ascertain the amount of loss, was an arbitration. (*Moran* v. *Bogert,* 16 Abb. [N. S.] 303–307; *Peters* v. *Newkerk,* 6 Cow. 103; *Van Cortland* v. *Underhill,* 17 Johns. 405, 406; *Sweet* v. *Morrison,* 116 N. Y. 20, 26.) An agreement for arbitration, like all other agreements, will be set aside when the assent thereto of one party is procured by the false and fraudulent representations of the other. So, also, will an award be set aside where corruption or partiality by one or more of the arbitrators is shown. (*Perkins* v. *Giles,* 53 Bar. 346; *Herrick* v. *Blair,* 1 Johns. Ch. 101; *Todel* v. *Barlow,* 2 id. 551; 2 Story's Eq. § 1452.) The award was rightly set aside on account of the evident partiality and bias of the appraiser Lacy. (Morse on Arbitrations, 106, 533, 538; *Sweet* v. *Morrison,* 71 N. Y. 77.) The questions: Whether Lacy was a disinterested appraiser or whether there was partiality on his part towards the defendant, are questions of fact for the determination of the jury. Their verdict upon such questions was in favor of the plaintiffs, and has been approved by the trial court and by the General Term, and is conclusive upon this appeal. (Code Civ. Pro. § 1337; *Kenney* v. *City of Cohoes,* 100 N. Y. 623; *Hewlet* v. *Elmer,* 103 id. 161; *Burgess* v. *Simenson,* 45 id. 225; *Putnam* v. *Hubbell,* 42 id. 113.)

PECKHAM, J. In October, 1887, the defendant issued a fire insurance policy for $3,000 for three years to the plaintiffs' devisor upon a dwelling house owned and occupied by

him in Schenectady, in this state.   In March, 1890, the build-
ing took fire and was nearly destroyed and the devisor of the
plaintiffs was at the same time suffocated in the flames.   The
will of the deceased was duly proved and about the 24th of
March, 1890, an agreement for the appointment of appraisers
was entered into pursuant to the provisions of the policy, for
the purpose of determining the loss.   The appraisers imme-
diately proceeded to a discharge of their duties and in due
time agreed upon and signed an award, dated the 25th of
March, 1890, for the amount of the loss as appraised by them,
viz., $1,760.31.   The plaintiffs refused to accept the sum thus
awarded and commenced this action to set the award aside on
the ground that the defendant, as they alleged, had induced
them to consent to the appointment of the appraiser nomi-
nated by defendant, by falsely representing that he was
entirely disinterested and indifferent in the amount of the
loss and damage and the appraisal thereof and that he was
designated by the defendant as appraiser for the reason that
he was a neighbor of the agent of defendant and an extensive
builder and was known by the agent to be competent and
indifferent between the parties.   The plaintiffs also sought to
recover in the action the amount of the loss actually sustained
from the fire up to the sum specified in the policy.   Issue was
joined and the case came on for trial before the trial judge
and a jury.

Two questions of fact were submitted to the jury, one as
to the actual amount of the loss caused by the fire, and the
other as to whether the appraiser selected by the defendant
was at the time of his appointment disinterested.   The jury
found the actual loss amounted to the sum of $2,750, and
that the appraiser was not disinterested.

In addition to these findings the trial court found the repre-
sentations were made as above alleged and that they were false
to the knowledge of the agent of the defendant who made
them, and that the appraiser was not impartial and indifferent
between the parties, but was biased in favor of the defendant
and determined to procure the best attainable award in its

favor, and that he was skillful in doing so; that the plaintiffs did not know him and that they relied upon the false representations of the defendant's agent and were thereby induced to enter into the agreement of appraisal which they would not have done but for such representations. The court also found that the award made by the appraisers was unjust to the plaintiffs in that it was $989.69 less than the true amount of damage. The court thereupon set aside the award and gave judgment for the full amount of the loss sustained, and from an affirmance of this judgment by the General Term the defendant appeals to this court.

The policy in question contained the following provision: "In the event of a disagreement as to the amount of loss the same shall, as above provided, be ascertained by two competent and disinterested appraisers, the insured and this company each selecting one, and the two so chosen shall first select a competent and disinterested umpire." The defendant questions the finding of the court below as to the fact of indifference and claims there was no evidence to support it and therefore its exception to that finding raises a question of law which we must review.

The counsel for the defendant is bound to maintain the proposition that a court or jury would have no right to find from the evidence that the appraiser was in fact biased and not disinterested.

It has not been decided that the evidence in the case showed that the appraiser was as matter of law biased. The question was submitted to the jury as one of fact for them to find, whether upon the evidence in the case the appraiser was disinterested, and they found as a fact that he was not disinterested. This finding of fact has been approved and reiterated by the trial judge to whom the verdict of the jury was advisory only. In order to reverse the judgment we must be able to say as matter of law that there was no evidence upon which the jury or the judge had a right to base a finding of bias as a matter of fact.

Upon a perusal of the evidence we are of the opinion that

the finding of fact has adequate support therein, and consequently the exception of the defendant is without merit.

There was testimony in this case tending to establish the following state of facts: The fire occurred on the 1st of March, 1890, and on the fifth of that month the general agent of the defendant met Mr. Jackson, who had acted as counsel for the deceased owner in other matters, and Mr. Jackson told the agent that nothing could be done until the will was proved, which would be about March seventeenth. No allusion was made to the amount of the loss, whether total or partial, and Mr. Jackson was then unaware of the facts. After the probate of the will and before Mr. Jackson had informed the agent as to the amount of the claim, a meeting was had on the 24th of March, 1890, at the office of Mr. Jackson in Schenectady, at which some of the plaintiffs were present and also the defendant's agent who had the question in hand for the defendant. At that meeting the agent demanded the appointment of appraisers under the clause of the policy above mentioned, and upon the expression of some surprise on the part of Mr. Jackson at the demand before the amount of the loss had been named or any attempt made at an agreement, the agent insisted upon it, so as to take the responsibility off his shoulders, as he said. When asked whom he would select as appraiser the agent named his man and made the representations regarding him already referred to. And so an agreement as to appraisers was at once entered into, and it then appeared that the appraiser for the defendant was in Schenectady, having been brought there by the agent of the defendant before he made the demand for appraisers and also before he had made the least effort to agree upon the amount of the loss. In other words, the first step taken on the part of defendant's agent towards an attempt to adjust the loss was to select this appraiser and bring him from Binghamton and have him on the ground prepared for business as soon as an agreement for his appointment could be arrived at. It also appeared and was found by the court that the defendant's appraiser had been employed by it within the

two preceding years about ten times, and the evidence showed that within three 'years he could not be certain that he had not been employed by defendant and other companies to appraise property as many as fifteen times. The defendant criticises the finding as to the number of times the appraiser had been appointed by the defendant within two years, and claims that it was not more than half a dozen. It is not probably very material, but the finding is not without evidence. The appraiser said he could not tell the number of times he had been so employed, that it might have been as many as fifteen times by defendant and other companies, and possibly half a dozen times, but not as many as ten by defendant. It is obviously a mere guess as to the division between the defendant and other companies, but the difference between half a dozen and ten is wholly immaterial. It appeared that when appointed he regarded himself as the special representative of the company and placed there specially to protect its rights, and he said he proposed to stand by whatever rights "we" had. As soon as he came upon the scene and after the agreement appointing him and his associate had been made, he seems to have taken the leading part. The evidence returned in this record is such that a jury might say that he abandoned his duties as a disinterested appraiser. Instead of being disinterested, the inference might be drawn that he acted as a sort of counsel for the defendant and bound as such to obtain the best possible award for it that he could ; that he did not act on the theory that although nominated by the defendant it was nevertheless his duty as a disinterested appraiser to make an award that should so far as he knew represent the honest and actual loss sustained by the insured by reason of the fire. And this state of mind may very naturally have been the result of his frequent employment in this capacity by the defendant. At any rate it cannot be said as a matter of law that no such result could follow from such employment. The evidence tends to show quite clearly that the award was chiefly the work of this appraiser, in whose hands the other seems to have been of very little importance. He was over-

shadowed, if not controlled by the stronger and more experienced man nominated by the defendant.

The defendant's nominee suggested to the other appraiser the duty of agreeing upon an umpire, and received with some dissatisfaction the suggestion of a name by the attorney for the insured, and called his associate to go with him to the place where the fire had occurred, and said they might perhaps there agree upon an umpire. On their way the defendant's appraiser said to his associate, he thought it would be better for both parties to go outside of Schenectady for an umpire, and before they arrived at the burned building, he suggested as a proper umpire a man living in Oneida, and who was unknown to his associate, but nevertheless he was agreed upon, and his name was thereupon, and before they went in the yard of the house, inserted in the agreement. This umpire, the defendant's appraiser said, he had met on one occasion where the umpire had appeared as an appraiser "against" him. The defendant's appraiser was also insured in the defendant's company. The result of the appraisement was an award of $1,760, or about $1,000 less than the real loss. Certainly a very large difference in such a total.

Upon all this evidence, I think it plain a question of fact was presented as to the disinterested character of the defendant's appraiser. I do not mean to say that had the facts which existed at the time of the appointment been known to plaintiffs, and the appointment had been then agreed to, there would have been any ground of complaint. Nor is there occasion to say that if the same facts existed, and no representations had been made in regard to the proposed appraiser, and he had been nominated by defendant, and consented to by plaintiffs, that then there would have been ground of complaint. The question does not here arise whether under such a state of facts the plaintiffs could find fault with the award, and claim to set it aside.

In this case we have further facts.

It is the positive statement made by defendant and believed by plaintiffs that the proposed appraiser was entirely disinter-

ested and indifferent as to the amount of the loss and the appraisal thereof and the concealment of the fact as to his relationship to the company, that forms the cause of action when taken in connection with the facts as found, that the appraiser was not disinterested. One of the questions to be considered was whether the fact of this frequent prior employment by the defendant and also by other insurance companies did so affect the individual that he was not a disinterested person. And for the purpose of seeing exactly what his condition of mind was towards the defendant it was proper for the trial court to take into consideration his whole evidence and his manner of testifying, and thus some light might be thrown upon the question at issue. It cannot be that the word "disinterested," as used in the policy, is confined to a lack of pecuniary interest in the question of loss. The policy says the appraiser must be "competent and disinterested," and this means some one who is not biased or prejudiced. If a company were to propose one of its own clerks as appraiser, would not the insured be justified in refusing to agree upon him or to consent to an appraisment where he was one of the appraisers? If the insured should then sue on the policy and the defense should be set up that he had refused to consent to the appointment of appraisers as called for by the policy, would it not be an answer that the company had itself refused to appoint a disinterested appraiser? Assuming that it was a question of fact, would not the fact that the person proposed was a clerk of the company, be sufficient upon which to support a finding that he was not "disinterested" within the meaning of the policy?

I think the evidence in this case is ample to justify the finding of the court that the representations were made, that they were false, that they induced the consent to the appointment of the appraiser, and that he was not disinterested. While it may be true that in the appointment of these appraisers each party nominates some one who may be supposed friendly to the side nominating him, yet he should at the same time be disinterested, or, in other words, fair and unprejudiced. The

duties of these appraisers are to give a just and fair award, one which shall honestly and fairly represent the real loss actually sustained by reason of the fire; and it is not the duty of either appraiser to see how far he can depart from that purpose and still obtain the consent or agreement of his associate, or in case of his refusal, then of the umpire. It is proper and to be expected that all the facts which may be favorable to the party nominating him shall be brought out by the appraiser, so that due weight may be given to them, but the appraiser is in no sense for the purpose of an appraisal the agent of the party appointing or nominating him, and he remains at all times under the duty to be fair and unprejudiced, or in the language of the policy, disinterested.

When a false statement is made in regard to the attitude of a proposed appraiser for the purpose of inducing consent to his appointment, which is in that way obtained, and where concealment is practiced in regard to his real attitude to the company nominating him, and when in fact he is not disinterested, good ground is shown for setting aside an appraisal which is grossly below the actual loss sustained, although it has been concurred in and agreed to by the appraiser nominated by the insured.

The case of Bishop against this same defendant (130 N. Y. 488) does not show that the appraiser nominated by a party is his agent in any proper sense of the word. In that case the charge was made by the defendant that the plaintiff had improperly refused to agree upon an umpire. The plaintiff in his turn charged defendant with such refusal. The court held that it was the duty of the appraisers to select a disinterested umpire, and if defendant's appraiser improperly neglected to join in or make any selection, his neglect of a duty which he owed could not be charged against the plaintiff.

The defendant's counsel had requested the court to charge the jury that the defendant was not bound by whatever the appraiser nominated by it did or failed to do in respect to the selection of an umpire. This was refused, as the court said, rightfully, because the two appraisers were to make the selec-

tion, and the failure of the defendant's appraiser to do his duty was not to be taken advantage of by defendant. The court expressly refused to say that as to the appraisal such appraiser represented the defendant in any sense as an agent.

Whether this agreement for appraisers be determined to be an arbitration or not is immaterial. The parties in the policy had stated what kind of appraisers were to be appointed, and each party had the right to believe that any specific representations of the other, as to any material fact, in regard to a proposed appraiser being disinterested, were true and might be relied on, and if they turned out false under the circumstances herein alleged and found, a good cause of action was proved.

The cases cited by the counsel for the defendant from the Massachusetts court are not in point. There was no finding of any false representations or concealment, and the facts stated were declared not enough as matter of law to set aside the award. In *Fox* v. *Hazelton* (10 Pick. 275) the court said the party proceeded with knowledge of the facts, which he subsequently complained of, or at least with sufficient to put him on inquiry, and if the objection had been taken early enough and overruled it would have been strong ground to set aside the award. (See also *Goodrich* v. *Hulbert*, 123 Mass. 190, and *Cheney* v. *Martin*, 127 id. 304.)

We see no error in the record and the judgment should be affirmed, with costs.

All concur.

Judgment affirmed.